**E-Filed 9/7/2011**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | Case Number 5:08-cv-04823-JF |
| Plaintiffs, | ORDER[1] DENYING DEFENDANTS' MOTION FOR RECONSIDERATION |
| v. | |
| KEVIN RYAN, et al., | |
| Defendants. | |

Defendants Kevin and Nancy Ryan ("the Ryans") seek reconsideration of the Court's order dated April 8, 2011, granting the government's petition for judicial approval to levy upon the Ryans' primary residence. The Court has considered the moving and responding papers as well as the oral arguments presented at the hearing on June 24, 2011. For the reasons discussed below, the motion will be denied.[2]

---

[1] This disposition is not designated for publication in the official reports.

[2] The government moved to strike the Ryan's motion for reconsideration as procedurally deficient, and sought an order precluding the Ryans' counsel from engaging in *ex parte* communications with the Court. The government withdrew these motions at the June 24 hearing.

Case No. 5:08-cv-04823-JF
ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION
(JFLC2)

## I. BACKGROUND

In 2004, the Internal Revenue Service ("IRS") disallowed a deduction in excess of $36 million that the Ryans had claimed on their federal income taxes for the year 2000. As a result, the Ryans had an outstanding federal income tax liability of approximately $17 million for the year 2000. The Ryans entered into an installment agreement with the IRS, but subsequently they defaulted on the installment payments. The IRS issued a Notice of Defaulted Installment Agreement and Notice of Intent to Levy and recorded a Notice of Federal Tax Lien. On October 22, 2008, the United States filed the instant petition to levy upon the Ryans' principal residence – a home in Monte Sereno, California – asserting an unpaid balance in excess of $11 million, including unpaid principal and penalties.

The Court continued the hearing on the government's petition numerous times so that the parties could engage in settlement discussions. During this period the IRS collected a portion of the unpaid balance; the Ryans have paid over some monies voluntarily, and the IRS has obtained other monies by levying upon the Ryans' other assets. The outstanding balance as of July 2009 was in excess of $6 million.

On November 5, 2010, the Court conducted a hearing on the government's petition after denying the Ryans' request for yet another continuance. The Court indicated its understanding that the amounts owing at that time were approximately $3.6 million in principal and an additional $2.6 million in penalties. Dkt. Entry 63, Trans. of 11/5/2010 hrg., p. 5. The Court stated that the government had demonstrated its entitlement to have its petition granted, but it suggested that entry of an order on the petition be deferred so that the Ryans could attempt to show that their outstanding tax obligation could be satisfied from assets other than their Monte Sereno home. *Id*. pp. 3-5. The Court also noted that the Ryans were pursuing an administrative appeal with respect to the $2.6 million in penalties. *Id*. pp. 5-6.

The Ryans' counsel suggested that the government already had all the information it needed, stating that:

> We provided net worth statements and reams of documents, probably about 600 pages of documents I can show you here right on the desk. They provide all the information regarding the assets.

*Id*. p. 8. The Court responded as follows:

> I don't doubt that you've given the government a lot of paper. I'm saying I can't tell from your moving papers that you have X, Y and Z assets with A, B and C value and D, E and F liquidity that could be liquidated by H, I, and J date.

*Id*. The Ryans' counsel responded by speaking at length about the various documents that had been provided to the government, and various pay-off plans that had been offered by the Ryans. *Id*. pp. 9-12. The Court again stated that it needed a more focused showing:

> I think what the government needs, and frankly what the Court needs, is more than a description of what is going to be done. I think that their [sic] needs to be backup and verification. It's almost like a due diligence of the assets and the liquidity.

*Id*. p. 14. The Court went on to specify:

> How long would it take to liquidate them? What you're actually going to net from them after any commissions and fees are paid? That's the kind of information that's needed so Mr. Newman can go to his client and say, there's enough money outside of the residence to satisfy the debt even if the appeals aren't successful.

*Id*. The Court then continued the matter to January 7, 2011, warning the parties that:

> I don't want to have this conversation again. I want to have a different conversation 60 days from now.

*Id*. p. 18.

Unfortunately, the Court did *not* have a different conversation with the parties at the next hearing. The government's counsel expressed continued dissatisfaction with the documents that had been provided to him by the Ryans. Dkt. Entry 65, Trans. of 1/7/2011 hrg., pp. 4-5. The Ryans' counsel then offered to provide a thousand additional pages of documents. *Id*. p. 6. The Court responded as follows:

> I don't want a thousand pages. What I want is, I want the summary that you submitted to Mr. Newman with the backup for your claim that your clients are able to satisfy any claim that the government has without the levy. . . . and that's it. I don't want anything else. We have been at this for months.

*Id*. pp. 7-8. The Court gave the Ryans two weeks to submit the requested documents, and gave the government one week to respond. *Id*. p. 10.

The Ryans submitted an additional memorandum with accompanying documents on

1  January 21, 2011.  The government submitted a reply memorandum with accompanying
2  documents on January 28, 2011.  The Ryans then submitted an unauthorized sur-reply on
3  February 7, 2011, attaching yet more documents.  On April 8, 2011, the Court issued an order
4  granting the government's petition for judicial approval of the levy.  The Court concluded that
5  the government had made out a *prima facie* case by introducing evidence that the Ryans'
6  underlying tax liability had not been discharged, that the requirements of law had been satisfied,
7  and that there was no reasonable alternative for collecting the debt other than levying upon the
8  Ryans' Monte Sereno home.  Dkt. Entry 71, Order, p. 2.  The burden thus shifted to the Ryans to
9  demonstrate that the statutory requirements for levy in fact were not met.  *Id*. p. 3.  The Court
10 found that the Ryans had failed to meet this burden.  *Id*. pp. 3-4.

The Ryans filed a motion for reconsideration and a motion to stay pending disposition of the motion for reconsideration.  The Court granted the motion for stay, set a briefing schedule with respect to the motion for reconsideration, and conducted a hearing on June 24, 2011.

## II. DISCUSSION

As an initial matter, the parties disagree as to the appropriate procedural vehicle for seeking reconsideration of the Court's order.  The Ryans seek reconsideration pursuant to Fed. R. Civ. P. 59 and 60(b), while the government contends that the Ryans' motion properly should have been brought pursuant to Civil Local Rule 7-9.  Because no final judgment has been entered, Rule 7-9 governs, and the Ryans failed to comply with that rule when they filed their motion for reconsideration without first seeking leave of court.  However, in the exercise of its discretion the Court will address the merits of the motion despite this procedural deficiency.

In order to prevail on their motion, the Ryans must demonstrate:

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought.  The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

4

Civ. L.R. 7-9(b). Moreover, such motion may not "repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7-9(c).

The Ryans assert that the Court deprived them of a full and fair hearing by limiting the evidence that they were permitted to submit with respect to their ability to satisfy the tax obligation from assets other than their home. They offer several "new" documents not previously submitted to the Court. The Court did not deny the Ryans due process. To the contrary, despite the fact that the Court concluded at the November 5, 2010 hearing that the government had demonstrated its entitlement to have its petition granted, the Court continued the hearing to January 7, 2011 to afford the Ryans an opportunity to present additional documents showing that they possessed assets sufficient to satisfy their tax obligation without selling their home. The Court gave very specific direction as to what the Ryans needed to show, as discussed in part I, above. At the continued hearing, the Ryans' counsel stated that he had provided certain documents to the government's counsel, and then offered to provide an *additional* 1,000 documents. The Court declined counsel's offer of the additional 1,000 documents and requested that the Ryans submit to the Court the documents they already had submitted to the government. The Court's denial of the Ryans' offer to provide an additional 1,000 documents at the end of the final, continued hearing on this matter did not constitute a deprivation of due process.

The Ryans also contend that the evidence in the record does not support the Court's conclusion that the Ryans are unable to satisfy their tax obligation from assets other than their home. The Court held that the government had established a *prima facie* case that it was entitled to levy upon the Ryans' home, the burden had shifted to the Ryans to demonstrate that they could satisfy their tax obligation from assets other than their home, and the Ryans had failed to meet this burden. The Court has examined all of the documents submitted by the Ryans, both in connection with the earlier hearings and in connection with the instant motion for reconsideration. The volume of documents is impressive. However there is a great deal of duplication, and the documents are not organized in a useful manner. The Court simply cannot discern what assets the Ryans have that could be sold immediately, what price those assets would

fetch, and whether the resulting proceeds would be sufficient to satisfy the tax liability. What should be a very straightforward inquiry – can the Ryans pay the tax obligation from assets other than their home? – has dragged out over such a long period of time, and has been so hopelessly complicated, that the Court simply is at a loss to understand what the Ryans are claiming and the strength of their support for those claims. The Court notes that the government's petition was filed in October 2008; nearly three years later, in September 2011, the Ryans still have not satisfied their obligations, either to the government or to the Court.

The Ryans claim that the Court erred by denying them the opportunity to take discovery from the government as to why the government believes the Ryans lack sufficient assets to pay their tax obligation. The Ryans merely repeat their previous arguments on the discovery issue. As the Court noted in its order granting the petition, this argument misses the point that once the United States has made a *prima facie* case, the burden shifts to the taxpayers to demonstrate that they have assets other than their primary residence that may be used to satisfy the tax obligation. Presumably, the Ryans are in the best position to document the state of their own assets.

Finally, the Ryans argue that the Court erred in concluding that it lacked authority to determine the validity of the tax penalty. The Court considered and rejected the Ryans' arguments on this point in its order granting the government's petition. The Ryans offer nothing new in their motion for reconsideration.

### III. ORDER

The motion for reconsideration is DENIED, and the stay of the order granting the petition for judicial approval of levy is LIFTED. The Clerk of the Court shall enter judgment and close the file.

DATED: 9/7/2011

_____
JEREMY FOGEL
United States District Judge

Case No. 5:08-cv-04823-JF
ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION
(JFLC2)